J. J. GAVIN & CO., INC. (SOELDNER-HEYMAN CO.) *v.* UNITED STATES

No. 7704.—Invoice dated Jaipur, India, May 20, 1939.
   Certified May 25, 1939.
   Entered at New York, N. Y., July 24, 1939.
   Entry No. 708722.

(Decided May 17, 1949)

*Barnes, Richardson & Colburn (Hadley S. King* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

JOHNSON, Judge: This appeal was filed by the importer complaining that the value found by the appraiser upon certain talc imported from India was too high. The 462 bags of talc powder, quality "Dubak," weighed 20 tons net and the invoice price thereof was pounds sterling 4/12/7½ per ton. Included in the total value thereof was the cost of cloth-lined bags, as well as the cost of marking and sewing same. Included also were the nondutiable charges of railway freight from Calcutta, railway siding fee, dock wharfage, shipping documents and bill of lading stamps, consular fee and postage, shipping agent's so-called commission, and post and telegraph charges to ship agent. The merchandise was entered at pounds sterling 4/11/7½ net, per ton, equal to a total value of $429.26, less the nondutiable charges, noted above, amounting to $134.41, or at a total net entered value of $294.85. The appraiser found applicable the United States value at U. S. $46.50 per ton of 2,000 pounds, gross weight, packed.

At the trial of this case counsel for both sides entered into certain agreements as to the facts, as follows:

MR. KING:

  \*   \*   \*   \*   \*   \*   \*

We offer to stipulate, first, that such or similar merchandise, on or about the date of exportation of the merchandise here involved, was not freely offered in India for export to the United States.

Is that agreed?

MR. SPECTOR: Yes.

MR. KING: It is further agreed that if the Court finds that there existed no foreign market value for this merchandise under Section 402 (c) of the Tariff Act of 1930 that on or about the date of exportation of the instant merchandise such or similar imported merchandise was freely offered for sale in the principal markets of the United States, packed ready for delivery, at $80 per ton.

MR. SPECTOR: That is right.

MR. KING: That such merchandise was freely offered at that price, less 1 per cent discount, less cost of transportation and insurance and other expenses, as set forth in Section 402 (e), and less duty, which figure works out to $34.92 per short ton of 2,000 pounds. Is that correct?

MR. SPECTOR: That is right.

MR. KING: That figure differs from the appraised value. It was found, after going into these figures, as a result of our negotiations with the Government, that their calculations, original calculations on United States value, had been incorrect; and if the Court finds that United States value under Section 402 (e) is the proper basis of value, that value should be $34.92 per short ton, and not $46.50.

Is that agreed to, Mr. Spector?

MR. SPECTOR: Yes, sir.

JUDGE JOHNSON: Does the Court understand that the Government agrees to that stipulation?

MR. SPECTOR: Yes, sir. We have worked this out prior to this hearing, so as to eliminate a lot of details and get to the crux of the issue. (Record pages 4 and 5.)

\*   \*   \*   \*   \*   \*   \*

MR. KING: If the Court please, before submitting this case we offer to stipulate with the Government that the cost of packing and other charges incident to placing the merchandise in condition, packed ready for shipment to the United States, is as shown on the consular invoice attached to the entry, that is:

Cost of cloth-lined bags _____ 210 rupees
Cost of marking on bags _____ 10 rupees
Cost of sewing bags and labor _____ 10 rupees

We further offer to stipulate that the cost of packing and placing the merchandise in condition, packed ready for delivery for sale for consumption in the markets of India, was one-half of that amount.

MR. SPECTOR: No objection. (Record page 14.)

In support of plaintiff's contention that there was a foreign value for the merchandise, an affidavit of Mr. N. V. Vakharia of Jaipur, India, sworn to before the American consul in the City of New Delhi, was admitted in evidence as exhibit 1. An affidavit of Mr. Nirmal Chandra Sarkar of the Commercial & Railway Stores Co. of Calcutta, sworn to before the American consul at Calcutta, was admitted in evidence as exhibit 2. An affidavit of Mr. Hari Charan Dutta of the Calcutta Mineral Supply Co., Ltd., of Calcutta, was admitted in evidence as exhibit 3. And an affidavit of Mr. Shamjibhai Harjiwan of the Indian Clay & Raw Products Supply Co. of Bombay, India, sworn to before the American consul at Bombay, was admitted in evidence as exhibit 4.

In support of Government's contention, a report by Bernard C. Connelly, American vice consul, mailed on June 1, 1940, was admitted in evidence as collective exhibit 5. A second report, mailed on January 30, 1941, embodying the correspondence between the shipper and the American purchaser as well as with the American consulate in Karachi, was admitted in evidence as collective exhibit 6. A report which was supplemental to the report admitted as collective exhibit 5, to which is attached a letter to the American consul from the director of the shipping company, was admitted in evidence as collective exhibit 7. A further report from the American consul in Karachi,

India, which included correspondence between the consular office and the shipper, and between the shipper and the purchaser in the United States, was admitted in evidence as collective exhibit 8.

The court has examined all of these affidavits, reports of Government officials, and the correspondence attached thereto with considerable care. A statement made by American Vice Consul Connelly in the report admitted as a part of collective exhibit 5 seems to have caused considerable confusion. It reads as follows:

Although these types and grades of talc are sold in India and abroad, a partner in the Syndicate stated that while the talc sold in the domestic market is similar to that exported, it is not absolutely the same. The talc processed for the Indian market has a rougher type of preparation, and as a consequence is not so clean, not so thoroughly ground, not so uniformly graded, and not so well packed as that destined for sale outside of India. [Page 6, par. 2, report mailed June 1, 1940.]

The accuracy of the foregoing statement is refuted not only in subsequent Government documentary evidence but also by the evidence produced by the plaintiff. There appears to be but four grades of talc produced by the shipper. The "Ezato" grade, which is of a fineness of 100–150 mesh, the "Dubak" grade, 200-mesh fineness, and the "Besta" grade, which is of a fineness of 300–325 mesh, comprise the best grades of talc. A poorer quality of talc known as "Clixy," which may be purchased in various degrees of fineness, is known in the home market as "gray quality." This quality had not been exported to the United States since the year 1939. All qualities, however, are sold in the home market and the only inferiority appearing is one that pertains solely to the packing. The product sold in India is in jute bags while the exported product is in a jute bag, lined with a cotton bag. The latter container costs double the single-jute container.

Inasmuch as the American importer is the sole agent of the Indian producer in this country the export value, as defined in section 402 (d), Tariff Act of 1930, cannot be determined, there being no freely-offered-for-sale price for talc destined for export to the United States. Section 402 (a) provides that the basis for determining the value first to be considered is "The foreign value or the export value, whichever is higher." If neither can be satisfactorily determined, then the United States value formula must be considered. So long as there is a foreign value, even if it is lower than the value at which merchandise is sold for export, the same shall prevail if an export value cannot be determined within the tariff language of the statute. In other words, there is nothing in the law which would prohibit the return of a foreign value for the merchandise because of the fact that it was sold for export to other countries at prices higher than for home consumption.

Subparagraphs (c) and (e) of section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provide as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

The producer of this particular talc sells the identical quality of talc in the home market to certain specified dealers throughout India, at prices regulated entirely by the producer. These dealers of talc, however, freely offer it for sale for home consumption to all purchasers in the principal markets of India, in the usual wholesale quantities and in the ordinary course of trade. These market prices prevail irrespective of the quantities sold. That is to say, no concessions are made for quantity purchases. From the evidence produced by the plaintiff as well as that introduced by the Government, Calcutta, India, was the principal market for talc. The "Dubak" quality of talc, in the opinion of the court, is established to have been freely offered for sale for home consumption in that market at 50 rupees per long ton (2,240 pounds), packed, at the time of shipment of the talc at issue. Inasmuch as the export packing is agreed to have cost double that of domestic packing, the 462 bags containing the 20 tons of talc, invoiced at a total cost of 230 rupees, equivalent to 11 rupees 8 annas per ton, would cost but half of that amount, or 5 rupees 12 annas per ton in the home market. Deducting the cost of the domestic packing from the home market value, the price of talc exclusive of packing in the home market on the date of shipment herein was 44 rupees 4 annas per ton of 2,240 pounds. The dutiable export packing charges to be added thereto of 11 rupees 8 annas per ton brings the foreign value of the merchandise to 55 rupees 12 annas per long ton.

For the reasons stated the court finds the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, to be the proper basis for the determination of the value for duty purposes, and that such value is 55 rupees 12 annas per long ton, packed.

Judgment will be entered accordingly.